**SO ORDERED.**

**SIGNED this 8th day of April, 2014.**



_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Robert A. Jarrett and | ) | |
| Patricia C. Jarrett, | ) | Case No. 12-11453 |
| | ) | |
| Debtors. | ) | |
| | ) | |

**MEMORANDUM OPINION REGARDING MOTION TO
EXCEPT ASSET FROM ABANDONMENT UPON CLOSING OF CASE**

This matter came before the Court on March 4, 2014, in Greensboro, North Carolina,

after notice to all parties in interest, upon the Trustee's Motion to Except Asset from

Abandonment Upon Closing of Case and for Authority to Reopen Case Without Payment of

Filing Fee, dated December 11, 2013 [Doc. # 18] (the "Motion"), and the Bankruptcy

Administrator's Response, dated March 3, 2014 [Doc. # 23] (the "Response").  Charles M. Ivey,

III appeared as the Chapter 7 Trustee, Lynn E. Coleman appeared as attorney for the Debtors,

and Robert E. Price appeared on behalf of the Bankruptcy Administrator.  After considering the

Motion, the Response, arguments of counsel, and the record, the Court has determined that the

Motion should be denied.  Pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure,

the Court makes the following findings of fact and conclusions of law:

**Jurisdiction**

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334 and Local Rule 83.11 entered by the United States District Court for the Middle District of North Carolina.  This is a core proceeding under 28 U.S.C. § 157(b)(2), which this Court may constitutionally hear and determine.

**Procedural History and Facts**

On September 28, 2012, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code.  The sole asset of the estate in this case is a one-half remainder interest in certain real estate located at 637 Robinhood Road, Bassett, Virginia (the "Real Property") owned by Robert A. Jarrett (the "Male Debtor").  The other one-half remainder interest is held by the Male Debtor's sister.  The Real Property is subject to a life estate in favor of the Male Debtor's mother.

The tax value of the Real Property has been assessed at $118,500.  The Debtors' scheduled the value of the Male Debtor's fractional interest at $7,110.  The Male Debtor also has claimed a $4,568.28 exemption in his interest in the Real Property.  The Debtors' schedules indicate a lien on the property in favor of Martinsville Dupont Credit Union in the amount of $42,362.

On December 11, 2013, the Trustee filed a motion seeking an order excepting the property from abandonment upon the closing of the case pursuant to 11 U.S.C. § 554(c) [Doc. # 18] (the "Motion").  The Trustee indicates that he personally has inspected the Real Property, and he believes that the tax value is an accurate representation of its marketable value.  The Debtors did not contest this value.  Nevertheless, even if the Trustee could meet the requirements of 11 U.S.C. § 363(h) to sell both the bankruptcy estate's and the co-tenant's remainder interests

in the Real Property,[1] the Trustee currently cannot sell the Real Property free of the interest of

the life tenant.[2]  Moreover, the Trustee asserts that he has no funds to employ an auctioneer, and

has unsuccessfully attempted to solicit offers for the estate's interest in the property from the

other one-half future interest holder, members of the Male Debtor's family, and those

specializing in the purchase of illiquid or unusual assets, among others.  The Trustee did not

indicate whether he has investigated the marketability of the remainder interests of both the Male

Debtor and the co-tenant if sold jointly.  Having come to the conclusion that there is no way for

him to currently realize the value of the estate's interest in the Real Property, the Trustee argues

that abandonment of the asset would result in an unwarranted benefit to the Male Debtor and

inappropriate harm to the creditors.[3]

The Debtors argue that indefinitely excepting the asset from abandonment is inequitable

to both the Male Debtor and his sister, as the Trustee has not disputed that the current value of

the Male Debtor's interest in the Real Property is minimal, and the Male Debtor has claimed

most of that value as exempt without objection.  The Male Debtor further points out that it is

unknown when the remainder interests will vest.  The Male Debtor's mother, who holds the life

estate interest in the property, is eighty years old and in good health, and the attorney for the

Debtors stated at the hearing on this matter that women in the Male Debtor's family tend to have

long life expectancies.

---

[1] The Trustee has not sought to sell the remainder interests jointly under 11 U.S.C. § 363(h), and that issue is not before the Court.

[2] The Trustee similarly has not sought relief to sell the entire fee interest of the Real Property, including the interest of the life tenant under section 363(h).  The Court notes without deciding that at least one court has held that section 363(h) does not permit the sale of property free of the interest of a life tenant.  See In re Sargent, 337 B.R. 661 (Bankr. N.D. Ohio 2006).  Moreover, even if section 363(h) permitted the sale of a life tenant's interest in property in which the debtor owned an remainder interest as a co-tenant, under the facts of this case, it would be difficult for the trustee to meet the requirements of section 363(h)(3), which requires that the benefit to the bankruptcy estate outweigh the prejudice to the life tenant.

[3] The Debtors' schedules reflect general unsecured creditors with claims totaling $42,140.

3

In light of concerns as to finality and monitoring, the Bankruptcy Administrator filed its Response, contending that motions to except property from abandonment under 11 U.S.C. § 554 (c) should be not be favored, but taking no position on the current Motion.

## Analysis

Section 554(c) of the Bankruptcy Code provides that "[u]nless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." 11 U.S.C. § 554(c). By stating "[u]nless the court orders otherwise," this section provides authority for courts to except previously disclosed assets from abandonment during the pendency of a Chapter 7 proceeding. See In re Prospero, 107 B.R. 732, 734-35 (Bankr. C.D. Cal. 1989) (noting that orders excepting assets from abandonment pursuant to section 554(c) are specifically authorized by the Bankruptcy Code and are within the Court's discretion). If a court chooses not to except a scheduled but unadministered asset from abandonment, it will be deemed automatically abandoned at the closing of the case by operation of law under 11 U.S.C. § 554(c). In re Caslin, 97 B.R. 366, 370 (Bankr. S.D. Ohio 1989); Behrens v. Woodhaven Association, 87 B.R. 971, 973 (Bankr. N.D. Ill. 1988); In re McGowan, 95 B.R. 104, 106 (Bankr. N.D. Iowa 1988).

There is little case law addressing the circumstances under which a bankruptcy court should order that an asset be excepted from abandonment pursuant to section 554(c). Cases providing guidance on this issue likely are rare due to practical considerations. Prospero, 107 B.R. at 734 (explaining that orders are "seldom sought" under 554(c), "because few chapter 7 estates have unadministered assets of any value or potential value when it is time to close the cases").

4

As noted by the Bankruptcy Administrator in this case, excepting assets from abandonment also causes administrative problems and conflicts with the policy in favor of finality of the administration of estates.  See 11 U.S.C. § 350 ("After the estate is fully administered and the court has discharged the trustee, the court shall close the case.") (emphasis added); 11 U.S.C. § 704 (noting that the "trustee shall . . . collect and reduce to money the property of the estate . . ., and close such estate as expeditiously as is compatible with the best interests of parties in interest . . .").

In In re Hart, 76 B.R. 774 (Bankr. C.D. Cal. 1987), the court considered the circumstances under which an order excepting an asset from abandonment should be entered.  In that case, the property of the estate included a fractional interest in a note secured by a first deed of trust on certain real property which was subject to a pending state court receivership.  Id. at 775.  The state court receiver informed the bankruptcy trustee that the real property securing the note was not then marketable, but that he expected to sell the property at some date in the future for an amount that would satisfy the note in full.  Id. at 775-76.  The trustee believed that any sale of the real property (and the resulting payment of the fractional interest in the note) would result in unsecured creditors receiving a substantial percentage of their claims, and therefore requested that the court except the fractional interest in the note from abandonment.  Id.

In considering the trustee's request, the court in Hart recognized the concerns of finality, noting that, "if claims or assets of the debtor do not have to be liquidated before closing, cases may be closed prematurely, thereby eroding the concept of the finality of the closing."  Id. at 777.  In addition, the court noted that monitoring an unabandoned asset usually will be problematic "in the absence of a Chapter 7 Trustee charged with the responsibility for

administering the estate." Id.  For these reasons, the court in Hart correctly noted that exceptions to abandonment under section 554(c) should be rare.

In light of the overriding concerns of finality and monitoring, the court first specifically observed that "[n]o further action by the Chapter 7 Trustee is required to recover this claim.  He will be notified by the Receiver if and when the property is sold." Id. at 776.  Having satisfied itself that there were no monitoring concerns in its case due to the presence of the state court receiver, the court set forth three factors, which a bankruptcy court should consider when asked to except an asset from abandonment.  The court found that an exception to abandonment may be justified when: (1) there is "reasonable possibility" that "an asset valuable enough to pay substantial dividends to the creditors may be recovered in the future[;]" (2) the event triggering the reopening of the case is clearly defined and will not require further action by the trustee; and (3) the triggering event is not likely to occur so soon that the case should just remain open. Id.  The court went on to hold that "if the asset was expected to be liquidated within say, a year, the case should probably be kept open until then." Id.

Applying these factors, the court in Hart granted the trustee's motion to except the fractional interest in the note from abandonment. Id. at 775, 777.  Specifically, the court found that the asset could not be liquidated for any substantial sum in the near future, but that if the underlying property ultimately were sold, then the scheduled creditors could receive as much as 90% of their claims. Id. at 777.  The court also noted that the event that would trigger the reopening of the case would be well defined and would not require oversight from the trustee, as the property was under the care of a receiver who would notify the trustee upon its sale. Id. at 776-77.

This Court finds the Hart factors and their application instructive in the present matter, but incomplete due to the limited facts at issue in that case.  Initially, the Court finds that the third Hart factor, that the triggering event should not be likely to occur in the near future, should be modified.  The Court agrees that, if the triggering event is likely to occur so soon, the case should simply remain open to administer the asset.  However, while the triggering event should not be imminent, if the asset is going to be excepted from abandonment, it conversely should be likely that the triggering event will occur within a reasonable period of time.  The event should occur within a reasonable period of time for a number of reasons, including without limitation: (a) the present value recognized by claimants will be reduced by the passage of time; (b) an extended passage of time likely will be inequitable to other interested parties and owners; (c) an extended interlude can create confusion with third parties, thereby undermining the authority and respect for the court; and (d) an extended interim period creates too many uncertainties as to whether the case might even ultimately warrant reopening.

In addition to this modification of the third Hart factor, additional factors should be considered.  In considering the Trustee's Motion, this Court also has considered the following additional factors: (4) the existence of a co-owner in the property at issue and the equities with respect to the rights of the co-owner; (5) the possibility that it will be economically impractical to reopen the estate to administer the asset; and (6) if the estate is not reopened, whether the retention of the asset in the estate could result in a perpetually unmarketable asset.  The Court will conduct this analysis on a case-by-case basis and no factor in this analysis is dispositive.  The Court will look to the totality of the circumstances in light of these factors when determining whether a motion to except an asset from abandonment should be granted.  Applying these factors, the Court finds that the Motion should be denied in this case.

Reasonable Possibility of Substantial Dividends

The Court believes that the substantiality of any potential future dividend should be considered not only in absolute dollars, but also in light of the amount of scheduled and/or filed claims in the case.  If possible, a court also should compare these figures with the current realizable value of the asset, if any, so that it can weigh the benefit of any delay against the current value available to creditors.[4]  The parties agree that the value of the Real Property is approximately $118,500.  After deducting the amount of the existing lien in the amount of $42,362, there remains unencumbered equity in the amount of $76,138.  Although the Trustee stated that he has attempted, but been unable to sell the Male Debtor's remainder interest, he did not indicate whether he had attempted to jointly market the Male Debtor's and co-tenant's remainder interests in contemplation of a potential sale under 11 U.S.C. § 363(h) subject to the life tenancy.

In determining the potential realizable value if the asset is not abandoned, the Court will begin with $118,500, the value of the Real Property without the burden of the life estate.  Based upon the total value of the Real Property and the existing lien, the Male Debtor's one half interest in the remaining equity equals $38,069.  From that amount, the Male Debtor has asserted an exemption without objection in the amount of $4,568.28, leaving potential equity for the estate in the amount of approximately $33,500.  However, the Court also must consider the cost of a commission for an auctioneer or broker.  In this case, such a commission would be approximately $3,500, and this amount should be deducted from the projected equity.[5]

---

[4] In this case, there is no evidence before the Court of the current realizable value of a joint sale of the remainder interests under 11 U.S.C. § 363(h), or whether grounds for such a sale are possible.  The Court is concerned that there may be significant current value available if the Trustee is able to jointly sell the remainder assets, but the Court has no evidence upon which to consider this issue.

[5] This calculation assumes a sale price of $118,500 and one half of a 6% commission charged against the Male Debtor's interest.

Therefore, assuming that there are no costs of sale or administration above a commission, there would be approximately $30,000 available to disburse to approximately $42,000 in claims, resulting in a distribution of approximately 71%. This would be a substantial distribution both in terms of absolute dollars and when compared to the amount of claims in the case.

However, the hopes for this seemingly substantial distribution are tenuous. While there appears to be a reasonable possibility of a substantial dividend to unsecured creditors if the Trustee were able to market the Real Property for sale free of the interest of the life tenant, the evidence does not show whether or by how much such amount exceeds the current value of a joint sale of the remainder interests. Furthermore, there are numerous uncertainties that could significantly affect any potential dividend. First, even if the Court assumes that the future projected value substantially exceeds the current joint value of the remainder interests, there is no certainty as to when such a distribution could be paid. It easily could take ten years or more for the life tenancy to end, the case to be re-opened, and the Real Property to be marketed and sold, especially if there is any dispute regarding any sale of the co-owner's interest under 11 U.S.C. § 363(h). If final re-opening, marketing, liquidation, and distribution takes only ten years, and assuming an interest rate at the current prime rate of 3.25%, the present value of that $30,000 distribution would be $21,000. This would reduce the effective dividend from 71% to approximately 50%.

At the hearing, the Trustee questioned whether the Court should reduce the projected value to present value, arguing that, if the present value deduction for any distribution is a consideration, there likely never would be a case in which excepting an asset from abandonment would meet the third factor enumerated by the court in Hart that the triggering event not be likely to occur in the near future. This might be so, but not necessarily, especially in light of the

9

modification of that factor set forth above requiring that the event be likely to occur within a reasonable time. Furthermore, as recognized by the court in Hart, it is entirely appropriate to employ an analysis that results in granting exceptions to abandonment only in very rare circumstances.[6]

Second, the analysis of the costs and proceeds set forth in the preceding paragraph is uncertain to the point of being overly optimistic. At the hearing, the Court specifically inquired as to whether the co-owner had indicated her consent to the sell the entire fee interest in the Real Property. The Trustee indicated that he had attempted to communicate with the co-owner, but that the co-owner had refused even to communicate with the Trustee about the Real Property. Moreover, the Male Debtor (sibling of the co-owner) appeared through counsel at the hearing on this matter and objected to the Motion. Therefore, it is likely that the co-owner would object to any sale of her interest pursuant to 11 U.S.C. § 363(h). The Trustee's expenses incurred in such a dispute would be solely chargeable against the estate's interest in the property and could substantially reduce any dividend as well as delay further the payment of any dividend. Even if such expenses were only $5,000 for instance, the present value of any distribution would be further reduced to approximately 40%. Finally, this entire analysis does not even consider how the costs of maintenance of the Real Property in the interim, including debt service, property maintenance, and/or any taxes, would be allocated between the estate and the co-owners.

In any event, even assuming the circumstances occur under which the estate ultimately will be able to distribute 40%, which is unlikely, and even if 40% were considered to be a substantial distribution, this would be the only factor even potentially weighing in favor of

---

[6] In Hart, there arguably was no need to reduce the value to present value, as the note presumably would continue to accrue interest in the interim period.

excepting the asset from abandonment in this case. However, for the reasons set forth above, this factor is uncertain and therefore indeterminate.

Clearly Defined Triggering Event with No Need for Monitoring by the Trustee

The Trustee argues that the triggering event in this case, i.e. the death of the life tenant, is equally as certain as the triggering event in Hart, i.e. the sale of the property by the receiver. It is not. There are key differences in this case. First, in Hart, there was no need for monitoring of the property or for monitoring the triggering event. Hart, 76 B.R. at 777-78 ("No oversight from the . . . Trustee is necessary here; Universal's receiver is already subject to the supervision of the District Court."). In this case, absent someone serving the purposes of a receiver of the asset as in Hart, there is no one to monitor either. The property in Hart was under the custody, care, and control of the receiver. Id. If the underlying property were sold, the receiver would notify the trustee and remit the proceeds of the note interest to the trustee without further administration or monitoring required by the trustee. Id.

In the present case, there is no supervision of the asset by a receiver or another court. Once the Trustee is discharged upon closing, the co-owner and life tenant will be the only parties with ownership interests in the Real Property available to maintain and monitor the property. Since the estate has an ever-present interest in the Real Property, there will be disincentives for the non-estate interest holders to expend funds to maintain the property at the risk of losing half of their expenditures.[7] Moreover, in contrast to Hart, if the life tenant dies, the Male Debtor and

---

[7] In North Carolina, a life tenant is charged with the duty to maintain the property in good condition. If she fails to do so, North Carolina recognizes a claim for "permissive waste." See McCarver v. Blythe, 555 S.E.2d 680, 682, 147 N.C. App. 496, 498 (2001). Furthermore, a life tenant "has the obligation to list and pay the taxes on the property." Thompson v. Watkins, 207 S.E.2d 740, 743, 285 N.C. 616, 620 (1974). Virginia appears to recognize similar obligations. See Nicholson v. LaFollette, 16 Va. Cir. 216, 1989 WL 646303 (1989) ("[A] life tenant has certain duties legally imposed on him[,] such as payment of real estate taxes and liability for waste."). Despite these apparent obligations, there is no indication that the life tenant's estate could reimburse the bankruptcy estate if a claim for waste accrues in the interim, and there will be no trustee there to monitor either the condition of the

his sister will have no incentive to notify the Trustee, especially if neither of them wants this family property sold.

Finally, even if the Trustee were to timely learn about the death of the life tenant, for which there is no certainty, this occurrence alone is not a triggering event for reopening this case. At most, it will be a triggering event for the beginning of the Trustee's investigation and analysis of whether reopening the case would be economically viable. In contrast, in <u>Hart</u>, the underlying property could not be sold free of the bankruptcy estate's lien without satisfaction of the note, including payment of interest under the note for the passage of time. If the receiver sold the property and forwarded the proceeds to the trustee, there would be no further expense or analysis by the trustee in deciding whether to reopen the case. For these reasons, the circumstances of this case are substantively and meaningfully different from those in <u>Hart</u>, and this factor weighs against excepting the asset from abandonment.

<u>Existence of a Co-Owner and the Equities Between the Estate and the Co-Owner</u>

In <u>Hart</u>, as in this case, the estate owned only a portion of the underlying property at issue. The estate there held a fractional interest in a note and deed of trust. <u>Id.</u> at 775. However, the real property which was subject to the lien securing the note in <u>Hart</u> was solely owned by Universal Financial Corporation ("Universal"), which, in turn, was under the sole control of the state court receiver. <u>Id.</u> In the case at bar, the bankruptcy estate holds a one half undivided interest as a tenant in common with the Male Debtor's sister in the remainder interest of the Real Property, which interest is subject to the interest of the life tenant. Therefore, if the case is closed without abandoning the Real Property, no one may sell the outright fee interest in the Real Property unless and until the estate is reopened. In the interim, in order to prevent foreclosure on

---

property or the payment of taxes during this period. There does not appear to be any obligation under either North Carolina or Virginia law for a non-possessory co-tenant in a remainder interest to maintain the property.

the property, someone is going to have to meet the obligations to the current lienholder.  If, for

example, the sister continues to service the debt and pays down the current lien, it would be

inequitable to permit the estate to recover the benefit of any resulting increase in the equity in the

value of the property.  The sister possibly could assert a claim (presumably by way of adversary

proceeding) for subrogation or an equitable lien in the estate's interest to the extent of any such

debt service, but it is inequitable to have her be subject to that burden or to the uncertainty that

such relief might be unavailable.  This factor similarly weighs against excepting the asset from

abandonment.

Possibility that Reopening Will be Economically Impractical so That the Real Property is
Perpetually Unmarketable

The last two factors are closely related and will be considered together.  If the Male

Debtor's interest in the Real Property is not abandoned upon closing of the case, it will remain

property of the estate.  11 U.S.C. § 554(d).  During a bankruptcy case, the trustee has the

exclusive right to administer assets of the estate.  See, e.g., In re Parks, 255 B.R. 768, 770

(Bankr. D. Utah 2000).  Closing of this case will discharge the Trustee and terminate his

services.  In re Menk, 241 B.R. 896, 913 (9th Cir. BAP (Cal.) 1999) (citing 11 U.S.C. § 350

("After the estate is fully administered and the court has discharged the trustee, the court shall

close the case.")).

Retaining the Real Property in the estate will leave no one to monitor or to administer the

Male Debtor's interest therein.  Therefore, both the Male Debtor's interest and the entire fee

interest will be unsalable absent the bankruptcy case being re-opened and the Court re-

appointing a trustee pursuant to Bankruptcy Rule 5010.  Id. at 914.  This limitation on the current

non-debtor interest holders and the indefinite effect on the alienability of the Real Property is

unfair and violates public policy.  See, e.g., Rich, Rich & Nance v. Carolina Constr. Corp., 558

S.E.2d 77, 80-81, 355 N.C. 190, 196 (2002) (explaining the public policies underlying the rule against perpetuities as having "'evolved to prevent ... property from being fettered with future interests so remote that the alienability of the land and its marketability would be impaired, preventing its full utilization for the benefit of society at large as well as of its current owners'" (quoting Village of Pinehurst v. Regional Invs. of Moore, Inc., 330 N.C. 725, 732, 412 S.E.2d 625, 648 (1992) (Meyer, J., dissenting) (quoting Anderson v. 50 E. 72nd St. Condo., 119 A.D.2d 73, 76, 505 N.Y.S.2d 101, 103 (1986), appeal dismissed, 69 N.Y.2d 743, 504 N.E.2d 700, 512 N.Y.S.2d 1032 (1987)))).  Therefore, either the facts in any case where such relief might be granted must involve triggering circumstances which are certain to occur within a reasonable time, or the court should tailor any relief granted in a manner to address this policy concern.

While there might be some set of conceivable circumstances under which: (a) the life tenancy ends within a reasonable time of the closing of the case; (b) the current Trustee learns of the end of the life tenancy; (c) the current trustee then investigates and discovers that there is sufficient value in the Real Property for the Trustee to administer the asset for the benefit of unsecured creditors; and (d) the requirements of section 363(h) are met to permit the sale of the co-owner's interest in the Real Property, it is very possible that any or all of these circumstances will not occur, and that, even if the current Trustee timely learns of the death of the life tenant, re-opening of the case will not be economically practical.[8]  If re-opening is not practical, the Male Debtor's interest in the Real Property (and therefore the entire fee interest) will be

---

[8] In addition to the Court's projected hypothetical analyses of the values at issue in this case, and in addition to the equities potentially affecting those values for any amounts expended by the co-interest holders in the interim as set forth above, over the next ten to twenty years, it is very possible that real property values could significantly depreciate as they did beginning in 2008, and that that depreciation alone could render it impractical to re-open the case.

unsalable absent some further action by this Court, and there will be no one charged with the obligation to seek such relief.[9]

At the hearing on this matter, the Court raised its concern that the requested action could create a perpetually inalienable asset with no effective owner.  In response, the Bankruptcy Administrator's office suggested that, if the Court were to grant the requested relief in this case, the Court could provide in an order that the asset would be deemed abandoned if the case were not reopened within a certain amount of time.  While the Court might consider such a protective provision in the rare case in which an exception to abandonment is warranted, for the reasons set forth herein, this is not such a case.

THEREFORE, the Motion should be DENIED, and the property located at 637 Robinhood Road, Bassett, Virginia, shall not be deemed excepted from abandonment under 11 U.S.C. § 554(c) in the event that the case is closed without having administered the asset.  An Order consistent with this Memorandum Opinion is filed contemporaneously herewith.

**END OF DOCUMENT**

---

[9] While the Male Debtor or his sister might have an incentive to ask that the case be reopened to compel abandonment in such circumstances, it is inequitable to put this burden on them simply because the circumstances did not occur which would make it in the economic interests of the estate to do so.